NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 13

Nos. 25-AP-426 & 25-AP-427

| | |
|---|---|
| In re Petition of VT Real Estate Holdings 1 LLC (Michael Algus et al., Appellants) | Supreme Court |
| | On Appeal from |
| In re Petition of Industrial Tower and Wireless LLC (Donna Dzugas-Smith et al., Appellants) | Public Utility Commission |
| | February Term, 2026 |

Edward McNamara, Commissioner

Geoffrey H. Hand, Victoria M. Westgate, and Megan E. Grove, of SRH Law PLLC, Burlington, for Petitioner-Appellee VT Real Estate Holdings, LLC.

Daniel A. Seff of MSK Attorneys, Burlington, for Petitioner-Appellee Industrial Tower and Wireless, LLC.

Cindy Ellen Hill of Hill Attorney PLLC, Middlebury, for Respondents-Appellants.


PRESENT: Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.


¶ 1. **REIBER, C.J.** In two pending cases from the Public Utility Commission (PUC), a group of residents were granted intervenor status and opposed developers' requests for a certificate of public good (CPG) from the PUC. After the PUC granted the CPG in both cases, intervenors appealed to this Court. Developers now move to dismiss, arguing that the appeals are untimely because they were filed beyond the thirty-day appeal period and the period was not tolled or extended. We continue our longstanding practice and conclude that under the applicable rules intervenors' timely motions to alter or amend tolled the time for filing an appeal under Vermont Rule of Appellate Procedure 4(b)(5). Therefore, we deny the motions to dismiss.

¶ 2. The relevant procedural facts for both cases are similar and undisputed. In In re VT Real Estate Holdings 1 LLC, No. 25-AP-426, the PUC issued a final decision granting developer, VT Real Estate Holdings 1 LLC, a CPG to construct a solar project in Shaftsbury, Vermont, on September 15, 2025. Intervenors filed a timely motion to reconsider under PUC Rule 2.221 on October 13, 2025. See PUC Rules of Practice Rule 2.221, Code of Vt. Rules 30 000 2000 [hereinafter PUC Rules]. On November 6, 2025, the PUC denied the motion, noting that Rule 2.221 "incorporates the language of Vermont Rule of Civil Procedure 59 without modification" and concluding that intervenors had not presented a basis to warrant relief. Intervenors appealed on November 28, 2025.

¶ 3. In In re Industrial Tower & Wireless, LLC, No. 25-AP-427, developer, Industrial Tower and Wireless, LLC, sought a CPG to construct a telecommunications tower in Westmore, Vermont. The PUC granted the petition on September 17, 2025. Intervenors filed a timely PUC Rule 2.221 motion on October 15, 2025. The PUC denied that motion on November 7, 2025, noting that PUC Rule 2.221 "incorporates the language of Vermont Rule of Civil Procedure 59 without modification" and concluding the motion did not meet the standard. Intervenors appealed on November 28, 2025.

¶ 4. This Court has consistently held that the timely filing of a notice of appeal is a jurisdictional requirement. In re Lund, 2004 VT 55, ¶ 4, 177 Vt. 465, 857 A.2d 279 (mem.). In general, a notice of appeal must be filed within thirty days of the judgment being appealed. V.R.A.P. 4(a)(1). The appellate rules explicitly provide that the running of the time to file a notice of appeal is tolled by the timely filing of certain post-judgment motions: "If a party timely files in the superior court any of the motions referenced below, the full time for appeal begins to run for all parties from the entry of an order disposing of the last remaining motion." V.R.A.P. 4(b); see Fagnant v. Foss, 2013 VT 16A, ¶¶ 10-13, 194 Vt. 405, 82 A.3d 570 (per curiam) (holding that motions toll appeal period if timely filed and not successive). The types of motions that toll the

2

appeal period include "a V.R.C.P. 59 motion to alter or amend the judgment." V.R.A.P. 4(b)(5). In both cases, the parties agree that the notices of appeal were filed more than thirty days from the date of the final decisions, but were timely if the motions to alter or amend tolled the appeal period.

¶ 5. Developers contend that there was no tolling because PUC Rule 2.221 motions are not listed in Appellate Rule 4(b). In addition, developers claim that under PUC rules there is no express tolling provision. As explained below, we conclude that although a motion to alter or amend to the PUC has a label of "PUC Rule 2.221," it is effectively a Civil Rule 59 motion in both substance and purpose. After rewriting its rules, the PUC has consistently recognized Rule 2.221 as such, and we give consideration to the PUC's interpretation of its rule. Following the PUC's adoption of the Rule 2.221 motion to alter or amend, this Court has accepted PUC appeals tolled by these motions as timely because it is the purpose of the motion and not the label that determines whether it can toll under Appellate Rule 4. See Fournier v. Fournier, 169 Vt. 600, 601, 738 A.2d 98, 100 (1999) (mem.) (concluding that party's motion to reconsider was "substantively indistinguishable from" motion to alter or amend and therefore tolled time to appeal under Appellate Rule 4).

¶ 6. Developers rely in large part on In re Jersey Street CU Reconsideration Denial, 2024 VT 20, 219 Vt. 151, 316 A.3d 248, but that case is distinguishable in several ways. In that case, the applicant sought a conditional-use permit from the town zoning board of adjustment. After the permit was denied, the applicant requested that the town reconsider its decision. The town denied the request, and the applicant filed an appeal with the Environmental Division. The appeal was filed within thirty days of the denial of the motion to reconsider but more than thirty days from the original permit denial. There were no local town rules allowing the filing of a motion to reconsider. The town asked the Environmental Division to dismiss the appeal, arguing that the motion to reconsider did not toll the appeal period and the appeal was therefore untimely

3

filed. The Environmental Division denied the motion to dismiss, concluding that the request to reconsider tolled the time to file an appeal under Appellate Rule 4(b)(5).

¶ 7. This Court granted the town's request for interlocutory appeal and reversed. Our holding rested on the language of the environmental court rules. Significantly, the applicant was appealing to the Environmental Division, and therefore, the Vermont Rules for Environmental Court Proceedings applied. Under those rules, not all parts of the appellate rules were incorporated. The plain language of Vermont Rule for Environmental Court Proceedings 5(b) incorporated the provisions of Appellate Rule 4(d) regarding extending the appeal period, but not the tolling provisions of Appellate Rule 4(b). Jersey St., 2024 VT 20, ¶ 15; see V.R.E.C.P. 5(b)(1) (providing that appeal is taken by filing notice within thirty days of order "unless the court extends the time as provided in Rule 4 of the Vermont Rules of Appellate Procedure."). Therefore, the tolling provided in Appellate Rule 4(b) was not applicable at all.

¶ 8. This Court went on to explain that the applicant's motion did not fall within the express language of Appellate Rule 4(b)(5), which applied to Civil Rule 59 motions filed "in the superior court." Jersey St., 2024 VT 20, ¶ 12. The town zoning board was not a "superior court" within the meaning of the environmental rules, and the applicant's request was an informal request to reconsider and not a Civil Rule 59 motion. Id.; see V.R.E.C.P. 6(b)(1) (defining superior court as "Civil Division of the superior court"). Moreover, there was no such thing as a motion to alter or amend under the applicable town rules.

¶ 9. As in Jersey Street, our decision here is directed by the language of the applicable rules. "In interpreting a court rule, we look first at the rule's plain language and construe it as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." In re Birt, 2020 VT 55, ¶ 9, 212 Vt. 500, 237 A.3d 1263 (quotation omitted). If the rule is part of a larger scheme, we read it in context and as part of the whole. New England Phx. Co. v. Grand Isle Veterinary Hosp., Inc., 2022 VT 10, ¶ 25, 216 Vt. 227, 275 A.3d 134.

4

"Finally, we avoid interpretations that would lead to an unjust, unreasonable and absurd consequence." In re O.R.G., 2026 VT 6, ¶ 8, __ Vt. __, __ A.3d __ (quotation omitted).

¶ 10.    This case is distinguishable from Jersey Street in several key respects. First, the appellate rules are directly applicable to appeals from the PUC, including the provisions on tolling under Appellate Rule 4. V.R.A.P. 1(a) (providing that appellate rules apply to appeal from administrative board or agency); see 30 V.S.A. § 12 (providing that remedy for review of PUC final orders is by appeal to Supreme Court). In contrast, the informal decision made by the municipal panel in Jersey Street was reviewed by the Environmental Division under the confines of the Rules for Environmental Court Proceedings, which do not incorporate the tolling provisions in Appellate Rule 4(b). See Jersey St., 2024 VT 20, ¶ 16 (explaining distinction in environmental court rules between courts and municipal panels). Moreover, in Jersey Street, the town zoning board had not adopted local rules allowing for the filing of a motion to alter or amend, whereas here, the PUC adopted a procedural rule that specifically provides for the filing of a motion to alter or amend and essentially incorporates the language of Civil Rule 59. PUC Rule 2.221 (providing that "PUC may on motion . . . alter or amend an order"). PUC Rule 2.106 instructs that the rules must "be liberally construed to secure the just and timely determination of all issues," and PUC Rule 2.103 provides that "to the extent that a provision of these rules is adopted from a related provision in the Vermont Rules of Civil Procedure, the Commission will look to caselaw (from the Commission and from the courts) as relevant precedent in interpreting" the PUC rule. Finally, the term "superior court" in the appellate rules includes "any administrative board or agency," V.R.A.P. (c)(1), while that term did not encompass the zoning board under the environmental rules applicable in Jersey Street.

¶ 11.    With these differences in mind, we conclude that the time to appeal in both of the cases before us was tolled under Appellate Rule 4(b) by intervenors' timely filing of a motion to alter or amend with the PUC. Appellate Rule 4(b)(5) provides that if a party timely files one of

certain enumerated motions "in the superior court," including "a V.R.C.P. 59 motion to alter or amend the judgment," then the appeal period begins to run after the motion is disposed.

¶ 12.    Developers argue that the PUC was not encompassed within the term "superior court" because, pursuant to the language in V.R.A.P. 1(c)(1), the definition applies "when an appeal is taken from a decision in which an appeal is permitted by law," and here they contend that there was no timely appeal when the motion to alter or amend was filed.  This construction of the rule is overly narrow because it would essentially remove from this Court the question of whether an appeal was timely filed.  The definition applies when the situation is one where "an appeal is permitted by law," and final orders from the PUC meet that definition.  V.R.A.P. 1(c)(1). Therefore, for purposes of determining whether the appeal was timely filed, the PUC was included in the definition of "superior court" in Appellate Rule 1.

¶ 13.    Moreover, although the motions filed were not labeled as "V.R.C.P. 59 motions," they had the same purpose and effect under PUC Rule 2.221, which includes identical language. We are not persuaded by developers' claim that because Appellate Rule 4(b)(5) refers to a "V.R.C.P. 59 motion to alter or amend," PUC Rule 2.221 is excluded.  The PUC's orders denying the motions in these cases expressly state that the PUC Rule 2.221 motions were the equivalent to Civil Rule 59 and construed by the PUC as such.[1]  Although the motions were labeled "PUC Rule 2.221" motions, that they were "substantively indistinguishable" from a Rule 59 motion is

---

[1]  Developers contend that by promulgating its own rules, the PUC chose not to adopt an express tolling mechanism and therefore Appellate Rule 4 should not apply.  Although it was the PUC's decision whether to adopt the civil rules or its own motion to alter or amend, whether to allow tolling of the appeal period and for what motions is a matter for the appellate rules.  The dissent relies on the fact that the PUC rules do not contemplate tolling, but that is not within the PUC's role.  It is for this Court to decide the proper construction of Appellate Rule 4.  The Court's past practice is relevant as a matter of fundamental fairness to the reasonable expectations of the parties.

dispositive.[2] Fournier, 169 Vt. at 601, 738 A.2d at 100 ("The caption is not determinative to the application of V.R.C.P. 59(e) and V.R.A.P. 4." (citing 11 C. Wright et al., Federal Practice and Procedure § 2810.1, at 122 & n. 8 (1995 and Supp.1999))); Finch v. City of Vernon, 845 F.2d 256, 258-59 (11th Cir. 1988) (explaining that to determine if motion tolled appeal period, "style of motion is not controlling," and question is whether motion seeks reconsideration of matters encompassed in decision). This reading of the rule also makes sense in the context of the language of the whole subdivision given that "superior court" in Appellate Rule 4(b) includes an administrative agency. If the specific civil rule numbers were also required to be incorporated by the board or agency, then the tolling provisions would never apply to motions filed with boards or

---

[2] The dissent relies on two unpublished, nonprecedential decisions where this Court declined to apply Civil Rule 59 tolling in two criminal cases. Post, ¶ 24. Even setting aside the fact that these cases are not binding precedent, they do not contravene the logic applied in this case. In State v. Durham, the defendant appealed the denial of a motion for sentence reconsideration and argued that his appeal was timely because his motion to reconsider the court's initial denial of sentence reconsideration tolled the appeal period. No. 2015-106, 2015 WL 4643268, at *1 (Vt. July 24, 2015) (unpub. mem.). This Court concluded that the defendant's "self-styled 'motion for reconsideration of motion to reconsider sentence,' [bore] no resemblance to any of [the Appellate Rule 4] listed rules in title or in substance." Id. at *2. In other words, this Court looked not just to the title of the motion, but its purpose, to determine if it was the type of motion that could toll under Appellate Rule 4. That is exactly the approach we take in this case. Similarly, in State v. Raymond, after the criminal division denied a motion for sentence reconsideration, the defendant several months later filed a motion to reconsider and then appealed the denial. No. 2016-187, 2016 WL 6562408, at *1 (Vt. Nov. 4, 2016) (unpub. mem.). We concluded the appeal was untimely, noting that nothing in the criminal rules authorized a motion to reconsider and allowing it to toll would "effectively expand the time for seeking a reduction of sentence well beyond the ninety days allowed from imposition of sentence or judgment on appeal." Id. Whereas the criminal rules did not recognize a motion to reconsider, the PUC does allow a motion to alter or amend. Because those motions are subject to a strict time requirement, there is no danger, as in Raymond, that tolling will expand the time period to appeal.

The dissent's reliance on In re Hopkins Certificate of Compliance, 2020 VT 47, 212 Vt. 368, 237 A.3d 661, is also misplaced. That case, like Jersey Street, involved an appeal to the Environmental Division from a zoning board, and our main holding was that Appellate Rule 4(a)(3) and (4) did not apply because "superior court" did not encompass such boards under the environmental rules. Id. ¶ 15 n.3. Both Jersey Street and Hopkins construe how Appellate Rule 4 is incorporated into the environmental rules; they do not construe Appellate Rule 4 directly.

7

agencies that have their own rule numbering, and there would be no purpose to incorporating the board or agency in the meaning of "superior court."

¶ 14.    This construction also effectuates the purpose behind the tolling provision of Appellate Rule 4 for a Rule 59 motion, which the U.S. Supreme Court has described as providing a "speedy disposition and finality" for all participants. Banister v. Davis, 590 U.S. 504, 516 (2020) (quotation omitted) (interpreting Federal Rule of Civil Procedure 59); see also Reporter's Notes, V.R.C.P. 59 (explaining V.R.C.P. 59 "is substantially similar to Federal Rule 59"). The filing of a Rule 59 motion "suspends the finality of the original judgment" for purposes of appeal, and the ruling on the motion then merges with the prior determination "so that the reviewing court takes up only one judgment." Id. at 508-09 (quotations omitted). A Rule 59 motion "briefly suspends finality to enable a [trial] court to fix any mistakes and thereby perfect its judgment before a possible appeal." Id. at 516. This opportunity "promotes an economic and effective appellate process, as the reviewing court gets the benefit of the [trial] court's plenary findings." Id. at 516-17 (quotation omitted).

¶ 15.    Therefore, we are not persuaded by developers' contention that allowing motions to alter or amend to toll the appeal period unfairly delays the proceedings.[3] A motion to alter or amend must be filed within twenty-eight days, V.R.C.P. 59(e), and only a timely motion to alter or amend tolls the appeal period. Fagnant, 2013 VT 16A, ¶ 10 (interpreting Civil Rule 59 prior to 2018 Amendment, which extended time to file motion from ten to twenty-eight days); see In re

---

[3] The dissent asserts that not applying the tolling in Appellate Rule 4(b)(5) to the PUC will promote finality, citing Jersey Street. Post, ¶ 32. The discussion in Jersey Street regarding finality was in our analysis of whether there was implied tolling given the environmental court's inherent authority to reconsider its decisions. See 2024 VT 20, ¶¶ 19-22. The analysis of that issue does not correlate to the issue in this case, which involves whether the PUC's motion to alter or amend tolls under Appellate Rule 4(b). It is unclear how the nonapplication of tolling would in any way save time, as the dissent alleges. PUC Rule 2.221 motions will be filed, regardless of whether they toll the appeal period. If they do not toll, then there will simply be more procedural hoops before a final determination may be reviewed by this Court.

Beach Props., Inc., 2015 VT 130, ¶ 8, 200 Vt. 630, 133 A.3d 854 (explaining that appeal of CPG ruling was untimely because motion for reconsideration was untimely filed "and therefore did not effectively toll the thirty-day appeal period"). If a timely motion is filed and does not toll under Appellate Rule 4, then the result will likely be more procedural requirements for the proponent of the motion, not a faster resolution to the case. The party filing the motion will be forced to file a notice of appeal at the same time the motion is filed and then ask this Court to hold the appeal in abeyance and remand to the PUC for resolution of the motion to alter or amend. This is exactly the situation that the tolling for resolution of Rule 59 motions in Appellate Rule 4 was meant to avoid. See Banister, 590 U.S. at 516 (explaining that Rule 59 motions make proceedings "more efficient" because they allow trial court to correct mistaken judgments or clarify reasoning, which leads to "an economic and effective appellate process").

¶ 16.    Finally, our conclusion is consistent with our prior practice allowing appeals from PUC decisions tolled by Appellate Rule 4(b)(5).[4] In fact, in Jersey Street, we acknowledged that our cases have inherently recognized that tolling applied to decisions from the PUC. 2024 VT 20, ¶ 17 (citing Beach Properties, 2015 VT 130, ¶ 8, where we held that untimely motion to reconsider filed with PUC did not effectively toll appeal period under Appellate Rule 4(b)(5) and therefore appeal from PUC's ruling on CPG was untimely). We distinguished Beach Properties, noting that appeals from the PUC are "governed by an entirely different statutory scheme, and [the PUC] had

---

[4] A review of appeals from the PUC to this Court from the last several years, including filings after the PUC's 2023 rules were adopted, indicates that in at least five instances there was a motion to alter or amend filed in the PUC that tolled the time to appeal to this Court. Although the issue of timeliness was not raised in those cases, the timely filing of a notice of appeal is a jurisdictional requirement, and this Court has an "independent obligation to ensure that we act only in cases" where there is jurisdiction. Mullinnex v. Menard, 2020 VT 33, ¶ 11, 212 Vt. 432, 236 A.3d 171; see In re Shantee Point, Inc., 174 Vt. 248, 259, 811 A.2d 1243, 1252 (2002) (noting that timely filing of notice of appeal is jurisdictional). Our past practice in allowing these appeals is relevant because litigants rely on it, and the purpose of rules is to create consistency and fairness. Krulee v. F. C. Huyck & Sons, 121 Vt. 299, 302, 156 A.2d 74, 76 (1959) (explaining importance of rules in creating "fairness, uniformity and regularity of treatment to all litigants").

promulgated specific rules governing reconsideration requests, under direct authorization from the Legislature." Id. This Court has consistently construed appeals from the PUC as timely where a motion to reconsider was timely filed with the PUC. Developers have not presented a reason to deviate from that practice and the fairness it provides.

¶ 17. Because intervenors' motions to alter or amend tolled the period to appeal, the appeals in these cases were timely filed.

Appellees' motions to dismiss are denied.

FOR THE COURT:

_____

Chief Justice

¶ 18. **NOLAN, J., dissenting.** I respectfully dissent from the majority's conclusion that intervenors timely appealed the Public Utility Commission (PUC)'s final orders in these cases. Under the plain language of Vermont Rule of Appellate Procedure 4(b)(5) and our decision in In re 2078 Jersey Street CU Reconsideration Denial, 2024 VT 20, 219 Vt. 151, 316 A.3d 248, intervenors' motions to alter or amend the PUC's final orders did not toll the running of the thirty-day appeal period. Because intervenors here noticed their appeal after the thirty-day window, and because hewing to the plain language of Appellate Rule 4(b)(5) and to our recent precedent in Jersey Street would promote finality and timely resolution of administrative proceedings, I would grant the motions to dismiss.

¶ 19. Vermont Rule of Appellate Procedure 4(a)(1) requires a notice of appeal to be filed within thirty days of the entry of the judgment or order appealed from. "The timely filing of a notice of appeal is a jurisdictional requirement." Casella Constr., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 3, 178 Vt. 61, 869 A.2d 157. Rule 4(b) provides that "[i]f a party timely files in the superior court any of the motions referenced below, the full time for appeal begins to run . . . from the entry

10

of an order" granting or denying that motion. The listed motions include a "V.R.C.P. 59 motion to alter or amend the judgment." V.R.A.P. 4(b)(5).

¶ 20. Even if the PUC qualifies as a "superior court" under Rule 4(b), ante, ¶ 10, intervenors' motions were not "V.R.C.P. 59 motion[s]."[5] V.R.A.P. 4(b)(5). The motions sought to amend final orders of the PUC and were filed under PUC Rule 2.221(A)(1). PUC Rules of Practice Rule 2.221, Code of Vt. Rules 30 000 2000 [hereinafter PUC Rules]. The PUC does not follow the Vermont Rules of Civil Procedure in its proceedings. When the PUC promulgated its current rules, it explicitly stated that although some rule language is adapted from the Vermont Rules of Civil Procedure, the PUC's rules control and "[t]he Vermont Rules of Civil Procedure therefore do not apply to Commission proceedings." PUC Rule 2.103. Thus, while PUC Rule 2.221(A)(1) provides a similar procedure to that found in Civil Rule 59, it is not a "V.R.C.P. 59 motion" within the plain meaning of that term.

¶ 21. We interpreted Appellate Rule 4(b)(5) the same way in <u>Jersey Street</u> in an appeal from the Environmental Division. 2024 VT 20, ¶ 1. There, an applicant whose zoning permit application was denied filed a request for reconsideration with the municipal zoning board. More than thirty days after it denied the permit, the zoning board denied the request for reconsideration, and the applicant appealed to the Environmental Division. The town filed a motion to dismiss the

---

[5] Developers made a compelling argument that the PUC was not a "superior court" for purposes of Vermont Rule of Appellate Procedure 1(c)(1) because, at the time the motions to alter or amend were filed with the PUC, no appeal had been "taken from a decision in which an appeal is permitted by law." That is a prerequisite for application of the Appellate Rules and the Rule 4(b)(5) tolling provision intervenors urge us to apply here. The majority dismisses this argument as "overly narrow because it would essentially remove from this Court the question of whether an appeal was timely filed." <u>Ante</u>, ¶ 12. But this reasoning appears circular. It is true that to give the words "when an appeal is taken" their plain meaning would also mean that the PUC was not a superior court when the post-judgment motions were filed and that the Rule 4(b)(5) tolling provision would not apply. But that only makes the developers' point. I can see no way in which this plain meaning interpretation of the Rule 1(c)(1) definition would remove from this Court's purview the power to decide whether any appeal is timely filed, including this one. Because I would rule that dismissal is warranted under the plain language of Appellate Rule 4(b)(5), I do not further address this issue.

appeal as untimely, "argu[ing] that the tolling provisions of Rule 4(b)(5) apply only to 'V.R.C.P. 59' motions filed with the 'the superior court.' " Id. ¶ 11. The Environmental Division denied the motion, concluding that the applicant's request for reconsideration tolled the running of the appeal period. The Environmental Division also expressed concern that the town's reading of the law " 'would create an awkward and inefficient land use system' by requiring appellants to simultaneously file a request for reconsideration and a notice of appeal." Id. ¶ 5.

¶ 22. We were not persuaded by the trial court's concern about awkwardness and efficiencies in Jersey Street. Instead, we "agree[d] with the Town's reading of the rules," explaining:

> [b]y its express terms, Rule 4(b) applies where "a party files in the superior court" any of the enumerated motions. Applicant here did not file anything with the superior court prior to its appeal. Furthermore, Appellate Rule 4(b)(5) applies to motions to alter or amend the judgment filed under Civil Rule 59, not to informal requests for reconsideration sent to a municipal panel. Civil Rule 59, in turn, only applies to actions that have been "tried" by a "court." While we have referred to zoning boards as "quasi-judicial bodies," Thompson v. Smith, 119 Vt. 488, 508, 129 A.2d 638, 651 (1957), they are not courts. Thus, Civil Rule 59 and Appellate Rule 4(b) are not, on their language, expressly applicable to these circumstances.

Id. ¶ 12.

¶ 23. The Jersey Street holding hinged, therefore, on a plain reading of the words "superior court" and "V.R.C.P. 59." Although the parties in this case dispute whether the PUC is a "superior court" under the Appellate Rule 1(c)(1) definition and I do not believe the majority adequately resolves the dispute, Jersey Street's literal reading of the term "V.R.C.P. 59" within Appellate Rule 4(b)(5)—as only "appl[ying] to actions that have been 'tried' by a 'court' "— equally informed its conclusion that tolling was unavailable. Id. ¶¶ 12, 16.

¶ 24. We reached our conclusion in Jersey Street by drawing from multiple precedents that declined to apply provisions of Appellate Rule 4(b). For example, before Jersey Street, we

declined to apply the rule's tolling provisions to motions to reconsider in criminal cases "because the rule refers to Civil Rule 59 motions, which have no equivalent in the criminal rules." Id. ¶ 14; see State v. Durham, No. 2015-106, 2015 WL 4643268, at *2 (Vt. July 24, 2015) (unpub. mem.) (dismissing for lack of jurisdiction because "the rules do not provide for such a particular motion and there is certainly no mechanism under the rules to extend the appeal period for resolution of one"); State v. Raymond, No. 2016-187, 2016 WL 6562408, at *1 (Vt. Nov. 4, 2016) (unpub. mem.) (declining to apply tolling provisions because "nothing in the rules authorizes such motions").

¶ 25.    We also rejected an argument that an appeal of a temporary certificate issued by a local zoning board was sufficient to preserve the issue of the final certificate's validity on grounds that Appellate Rules 4(a)(3) and (4), which govern premature appeals, were inapplicable in that context. In re Hopkins Certificate of Compliance, 2020 VT 47, ¶ 15 n.3, 212 Vt. 368, 237 A.3d 661.    Relying on the plain meaning of its text, we deemed Rule 4(a)(3) " 'applicable to announcements of decision made by a 'superior court,' not a local zoning board of adjustment," and Rule 4(a)(4) "inapposite" because "none of the motions enumerated in Rule 4(b) were filed." Id.

¶ 26.    In my view, the same rationale bars intervenors' motion here.  A "V.R.C.P. 59 motion" is a motion seeking relief under the civil rule.  See Jersey St., 2024 VT 20, ¶ 16 (explaining that under appellate provision of Rules for Environmental Court Proceedings, "the tolling procedures of Appellate Rule 4(b)(5) would only apply where a Civil Rule 59 motion is filed with the Civil Division of the Superior Court").  Intervenors' motion was not a "V.R.C.P. 59 motion" because it sought relief from the PUC under PUC Rule 2.221, which is not referenced in the appellate rules.  It therefore did not toll intervenors' thirty-day deadline for filing an appeal to this Court under Appellate Rule 4(b)(5).

¶ 27. In reaching the opposite conclusion, the majority relies, first and foremost, on the PUC's own practice and its understanding of the PUC's interpretation of its own rules. Ante, ¶ 13. Even if the majority's observations of PUC practice are accurate, I find it irrelevant to the linchpin issue of the breadth of Rule 4(b)(5) and whether its language "V.R.C.P. 59" can also be read to mean "V.R.C.P. 59 and PUC Rule 2.221," as the majority would have us. Our answer to that question should not depend on our understanding of the PUC's understanding of the meaning of its own rules—the interpretation of which is not at issue in this appeal.[6] Rather, I believe that the answer should turn on the plain language of Rule 4(b)(5) and Jersey Street, which did not interpret the words "V.R.C.P. 59" within Rule 4(b)(5) as meaning anything but what they say.[7]

¶ 28. I acknowledge the majority's point that we have previously allowed appeals from PUC decisions that were not filed until after a motion to alter or amend was decided. Ante, ¶ 16;

[6] In looking to the PUC's understanding, the majority cites Fournier v. Fournier, 169 Vt. 600, 601, 738 A.2d 98, 100 (1999) (mem.), for the proposition that a pleading caption is not determinative of whether that pleading qualifies as a Rule 59 motion. Ante, ¶ 13. This reliance also misses the mark, however, because Fournier involved a "motion to reconsider" filed by a mother in a child custody case, which is a family proceeding governed by the Rules of Civil Procedure. See V.R.F.P. 4.0(a)(2)(A) (stating Rules of Civil Procedure apply in family proceedings except where noted). The civil rules also applied in cases that followed Fournier for the proposition that a motion to reconsider is treated as a Rule 59 motion if the content and timing of the motion indicate that was the intent. See Fagnant v. Foss, 2013 VT 16A, ¶ 7, 194 Vt. 405, 82 A.3d 570 (citing Fournier in civil proceeding); see also Knapp v. Dasler, No. 22-AP-331, 2023 WL 6786081, at *2 (Vt. Oct. 13, 2023) (unpub. mem.) (citing Fournier in family proceeding); Parro v. Parro, No. 2020-221, 2021 WL 73947, at *2 (Vt. Jan. 8, 2021) (unpub. mem.) (same); In re H.D., No. 2014-040, 2014 WL 3715003, at *2 (Vt. July 24, 2014) (unpub. mem.) (citing Fournier in CHINS proceeding). Here, there is no dispute that the civil rules do not apply to the PUC, and the PUC rules say that expressly. PUC Rule 2.103 (explaining "[t]he Vermont Rules of Civil Procedure . . . do not apply to Commission proceedings"). Moreover, and more importantly, this appeal does not ask us to assess whether a civil motion was properly styled; it asks us to define the parameters of Appellate Rule 4(b)(5)'s tolling provision and specifically whether the words "V.R.C.P. 59" also mean "and PUC Rule 2.221." I do not see how Fournier and its progeny advance that analysis.

[7] If we were to take our guidance from the PUC rules, perhaps the most telling feature would be the absence within those rules of any provision for tolling the appeal filing deadline pending resolution of motions to alter or amend judgment. While any such PUC rule would not be dispositive because the appellate rules dictate what motions trigger tolling, it is noteworthy that the PUC regulations themselves do not contemplate tolling for a motion to alter or amend.

see, e.g., In re Petition of Apple Hill Solar LLC, 2026 VT 8, __ Vt. __ , __ A.3d __.  In my view, this is not an overriding consideration because no party raised the issue of timeliness or moved to dismiss on that ground.  It is simply "not the proper role of this Court to foretell, through the art of divination, those issues which the parties deem appropriate for resolution," even in a criminal case where constitutional issues may be implicated.  See State v. Taylor, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) (refusing to "construct an appellate case for either party out of whole cloth," and observing in criminal context that "[t]he burden for proper presentation of issues raised upon appeal is with the appellant, and of those issues raised upon cross-appeal, with the appellee").  Indeed, in Jersey Street, we cautioned against reading too much into language of a prior opinion suggesting a motion for reconsideration before the PUC might have tolled the thirty-day appeal period because it was not an issue raised by the parties in that appeal.  2024 VT 20, ¶ 17 (distinguishing In re Beach Props., Inc., 2015 VT 130, 200 Vt. 630, 133 A.3d 854).

¶ 29.    Surely these noncriminal appeals, which do not implicate constitutional rights, do not present "the rare and extraordinary case [in which] this Court will consider, sua sponte, issues not properly raised on appeal before us," Taylor, 145 Vt. at 439, 491 A.2d at 1035, such that the Court should have, on its own volition, gatekept for timeliness even though no party raised the issue.  But even if they did, the Court would not have been able to do so, because the law on this issue was unsettled at the time of those appeals.  Jersey Street expressly reserved decision on whether Appellate Rule 4(b)(5) would toll the appeal period when a motion to alter or amend is filed before the PUC.  2024 VT 20, ¶ 17 ("Furthermore, [Beach Properties] is easily distinguished from the situation here in that the Public Service Board [now the Public Utility Commission] was governed by an entirely different statutory scheme, and it had promulgated specific rules governing reconsideration requests, under direct authorization from the Legislature.").

¶ 30.    Likewise, a decision granting these motions to dismiss would not expose the Court's orders in previous PUC appeal cases to viable collateral challenges.  Claim preclusion

15

"bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." Berlin Convalescent Ctr., Inc. v. Stoneman, 159 Vt. 53, 56, 615 A.2d 141, 143 (1992) (quotation omitted). This is true not only of issues that "actually were litigated but also of those that should have been raised." Daiello v. Town of Vernon, 2018 VT 17, ¶ 12, 207 Vt. 139, 184 A.3d 1192.

¶ 31. In other words, the idiosyncrasies of PUC parties' appellate litigation strategy do not the law make. With the issue now squarely before us, I would follow the plain meaning of Appellate Rule 4(b)(5), Jersey Street, and the precedents it drew from.

¶ 32. Jersey Street relied not only on the plain text and meaning of Appellate Rule 4(b)(5), but also on the policy goal of finality. 2024 VT 20, ¶ 20. After concluding that Rule 4(b)(5)'s tolling provisions did not, on their face, apply to suspend the thirty-day appeal filing deadline, the Court took up the appellant's argument that tolling should exist as an "implied corollary" of a municipal panel's inherent authority to reconsider its decisions. Id. ¶ 19. We rejected that argument as inconsistent with the policy objective of finality, a legislative purpose "our cases have consistently recognized and enforced." Id. ¶¶ 24-25 (collecting cases). The Court acknowledged the Environmental Division's concern about the "awkward and inefficient land use system," but declined to "permit[] tolling based merely on the filing of a request for reconsideration" because it "would impede the goal of finality." Id. ¶¶ 21, 26. Although Jersey Street's endorsement of the goal of finality arose during its discussion of implied authority, the plain meaning interpretation it gave to Rule 4(b)(5) promoted finality in the same vein as its denial of implied authority. Adopting the same reading here would likewise advance the finality objective for PUC proceedings.

¶ 33. To be sure, moreover, long before Jersey Street, we consistently stated that the provisions of Appellate Rule 4 must be strictly construed to ensure finality of decisions. See, e.g., Casella Constr., Inc., 2005 VT 18, ¶ 6 ("We require strict adherence to deadlines for filing notices

16

of appeal primarily to serve the goal of finality."); In re Lund, 2004 VT 55, ¶ 5, 177 Vt. 465, 857 A.2d 279 (mem.) (explaining that "Rule 4's 'excusable neglect' standard must be strictly construed to prevent a de facto enlargement of the appeal period from thirty to sixty days"). In fact, the PUC rules contain a similar goal: "These rules shall be liberally construed to secure the just and timely determination of all issues presented to the Commission." PUC Rule 2.106.

¶ 34. I believe that Jersey Street and the plain language of Appellate Rule 4(b)(5) require granting the motions to dismiss and that this outcome would promote finality and efficiency in PUC appeals and improve the overall PUC appeal system. Extending Jersey Street to the PUC context would mean all appeals from the PUC would be filed within thirty days, instead of up to thirty days after the amount of time it takes in any given case to file, litigate, and resolve a motion to alter or amend judgment. The time saved will vary in each case, but writ large it will be considerable and promotive not only of finality, but of the PUC's own goal of "timely" determinations of all issues before it.

¶ 35. The majority is concerned that "[i]f a timely motion is filed and does not toll under Appellate Rule 4, then the result will likely be more procedural requirements for the proponent of the motion, not a faster resolution to the case." Ante, ¶ 15. The procedural requirements it has in mind are that "[t]he party filing the motion will be forced to file a notice of appeal at the same time the motion is filed and then ask this Court to hold the appeal in abeyance and remand to the PUC for resolution of the motion to alter or amend." Id. This is reminiscent of the Environmental Division's concern in Jersey Street over creating " 'an awkward and inefficient land use system' " by requiring appellants to simultaneously file a request for reconsideration and a notice of appeal. 2024 VT 20, ¶¶ 21, 26. But just as we rebuffed that concern in Jersey Street, we should do so here, because the efficiencies gained from an across-the-board thirty-day appeal window—as opposed to effectively no appeal deadline in any PUC case, because there is no deadline for how soon the PUC must decide motions to alter or amend—will far outweigh the time it takes for the appellant

17

to make the pro forma filings that go into accomplishing the procedural requirements the majority identifies.

¶ 36.    The majority's reliance on Banister v. Davis, 590 U.S. 504 (2020), does not change the analysis for me.  Banister held that a motion to alter or amend judgment in a habeas case does not constitute a second or successive petition that is barred by the Antiterrorism and Effective Death Penalty Act of 1986 (AEDPA).  Id. at 521.  In reaching that conclusion, the U.S. Supreme Court highlighted the salutary purposes of Civil Rule 59 motions to contrast them from successive or second petitions, which frustrate AEDPA's purposes of "reducing delay, conserving judicial resources, and promoting finality."  Id. at 515.  There is no dispute that Civil Rule 59 motions have a salutary purpose across a wide variety of civil cases, including habeas matters.  The question is the scope of Appellate Rule 4(b)(5) and its applicability to PUC proceedings, so reliance on Banister, in my view, misses the mark.

¶ 37.    The majority also worries that "if the specific rule numbers were also required to be incorporated by the board or agency, then the tolling provisions would never apply to motions filed with boards or agencies that have their own rule numbering" and "there would be no purpose to incorporating the board or agency in the meaning of 'superior court.' "  Ante, ¶ 13.  This observation, while true as far as it goes, is equally unavailing.  The agency or board can of course label and number its rules however it sees fit, but the crux of the issue is the scope of Appellate Rule 4(b)(5).  Until such day as the rule is amended to bring administrative motions to alter or amend within its tolling ambit, it does not and cannot, apply to PUC proceedings.  There are any number of ways to amend the rule in this fashion, including by removing the words "V.R.C.P. 59."

¶ 38.    Extending the plain meaning of Appellate Rule 4(b)(5) and Jersey Street precedent to this appeal would result in the earlier filing of motions to reconsider in PUC proceedings and the filing of all PUC appeals to this Court within thirty days.  This would in turn promote finality

18

and timely resolution of issues—policy goals endorsed by this Court and the PUC—thereby honoring both the interests of form and of substance.

¶ 39.  Because Appellate Rule 4 lists only Civil Rule 59 motions to alter or amend as tolling the appeal deadline, I would hold that intervenors' appeals were untimely and dismiss the appeals for lack of jurisdiction.  I therefore respectfully dissent.

_____
Associate Justice